RILLA BECKER, Respondent, v. S. Z. SCHUTTE, Appellant.

Kansas City Court of Appeals, June 11. 1900.

1. **Action: MUNICIPAL CORPORATION: POLICE REGULATION.** The police regulations of a municipality controls the citizen in respect to his relations to the public and can not effect the civil liability of citizens to one another; so an ordinance creates no new rights or remedy as between citizens, though the charter of a municipality stands on a different footing.

2. **Appellate Practice: COURTS OF APPEALS: SUPREME COURT.** The courts of appeals follow the last decision of the supreme court without inquiring whether it is in harmony with earlier decisions.

3. **Negligence: ACTION: COMMON LAW: UNTIED HORSE: ORDINANCE.** One who leaves a horse loose and unattended in a street is responsible for the injuries done by its running away; and a petition founded on an ordinance forbidding the leaving of an unsecured horse on the street, is but a common-law action for negligence.

4. **Courts: NUNC PRO TUNC ORDERS: BILL OF EXCEPTIONS.** Where the court pronounces a judgment and the clerk fails to enter the same, it is competent for the court during the term, from its own recollection, to correct or amend its entry *nunc pro tunc;* so where the court extended the time for filing a bill of exceptions and the clerk failed to enter the order, the court can later in the term have the order entered *nunc pro tunc* though the time originally given for filing the bill had expired in the meantime.

5. **Negligence: SECURING HORSE: ORDINARY PRUDENCE: JURY QUESTION** One leaving his horse on the street must use such care in fastening the animal as a prudent person would exercise under similar circumstances, and whether such care was used is the question for the jury.

Becker v. Schutte.

6. **Witnesses:** CROSS-EXAMINATION: FOUNDATION FOR CON-
TRADICTION: COURT'S DISCRETION. While a witness on
cross-examination may be competent to answer many irrelevant
questions tending to test his accuracy, veracity, credibility or char-
acter, yet such examination is somewhat in the discretion of the
trial court to prevent its abuse; and the mere fact that a witness
may have innocently sworn falsely is not admissible for the pur-
pose of showing him to be a corrupt witness, but it must be shown
that he willfully testified falsely.

Appeal from the Jackson Circuit Court.—*Hon. James
Gibson*, Judge.

AFFIRMED.

*Ashley, Gilbert & Dunn* for appellant.

(1)   Does petition state facts sufficient to constitute
cause of action?   This petition is based on the breach of a
municipal ordinance.   The breach of a municipal ordinance
can not be the basis of civil liability between private indi-
viduals, unless there has been a contractual liability by ac-
ceptance of ordinance by defendant.   Senn v. Railroad, 108
Mo. 142; Moran v. Car Co., 134 Mo. 641; Railroad v. Erin,
89 Pa. St. 71; Sanders v. Railway, 147 Mo. 411; Byington
v. Railway, 147 Mo. 673; Allen v. Railway, 2 Mo. App. Rep.
830; McAndrew v. Railway, 3 Mo. App. Rep. 207; Railway
v. Carlisle, 94 Mo. 166; Childs v. Railway, 117 Mo. 427.
(2) The court refused to permit defendant to show that
plaintiff had testified falsely as to her ownership of property
and had made a false affidavit on her application to sue as a
poor person.   Now, while generally a party is bound by an-
swer of witness given on examination as to a collateral issue,
yet this rule is not applicable where evidence goes directly
to the credit of the witness, and shows her to be a corrupt
witness.   State v. Downs, 91 Mo. 25; Owens v. Railway, 95
Mo. 183; 1 Greenlf. on Evid. (14 Ed.), sec. 462, p. 564,

note (*a*); Jarmin v. Fogg, 49 N. H. 340; State v. Downs, 91 Mo. 19; State v. Hack, 118 Mo. 99; Muller v. Hospital Ass'n, 5 Mo. App. 401; Affirmed, 73 Mo. 243. (3) Court erred in refusal and giving of instructions. Davis v. Spicer, 27 Mo. App. 279, et seq.; Mathiason v. Mayer, 90 Mo. 585; Harlan v. Railway, 65 Mo. 25; Henry v. Railway, 76 Mo. 288; Murphy v. Railway, 153 Mo. 252; s. c., 54 S. W. Rep. 442; Taylor v. Iron Co., 133 Mo. 364; Wallis v. Westport, 3 Mo. App. Rep. 148, and cases there cited.

*Ben. T. Hardin* for respondent.

(1) The judgment in this case should be affirmed for the reason that the bill of exceptions was never filed within the time allowed by the court at the term during which the judgment was rendered. State v. Schuchmann, 133 Mo. 111; State v. Woolwine, 128 Mo. 347; Knapp v. Transit Co., 127 Mo. 499; State v. Simmons, 124 Mo. 443; Musick v. Railway, 124 Mo. 544; Danforth v. Railway, 123 Mo. 196; Fulkerson v. Murdock, 123 Mo. 292; State v. Ryan, 120 Mo. 88; State v. Clark, 119 Mo. 426; Dorman v. Coon, 119 Mo. 68; Burdoin v. Trenton, 116 Mo. 358; State v. Mosely, 116 Mo. 545; State v. Britt, 117 Mo. 584; State v. Apperson, 115 Mo. 470; State v. Scott, 113 Mo. 559; State v. Seaton, 106 Mo. 198; State v. Berry, 103 Mo. 367; State v. Mayor, 99 Mo. 602; State v. Hill, 98 Mo. 570; Johnson v. Greenleaf, 73 Mo. 671; Mitchell v. Williams, 79 Mo. App. 389; Maddox v. Railway, 73 Mo. App. 510; Loewen v. Hicks, 63 Mo. App. 79; State v. Harrison, 62 Mo. App. 112; Wyllie v. Heffernan, 58 Mo. App. 657; State v. Sweeney, 54 Mo. App. 580. And this statutory rule can not be evaded by *nunc pro tunc* entries. Maddox v. Railway, 73 Mo. App. 510; Wyllie v. Heffernan, 58 Mo. App. 657; Dorman v. Coon, 119 Mo. 68; Burdoin v. Trenton, 116 Mo. 358. (2) After the term of

court at which the final judgment is rendered a *nunc pro tunc* entry can not be made from the judge's recollection of what has taken place; nor can evidence *aliunde* be resorted to for that purpose. Page v. Chapin, 80 Mo. App. 159; Bohm v. Stivers, 75 Mo. App. 291; Loewen v. Hicks, 63 Mo. App. 79; Wyllie v. Heffernan, 58 Mo. App. 657; McGonigle v. Bresnen, 44 Mo. App. 423; Green Co. ex rel. v. Wilhite, 35 Mo. App. 39; Evans v. Fisher, 26 Mo. App. 541; Cunningham v. Wells, 16 Mo. App. 78; Railway v. Holschlag, 144 Mo. 253; Mill Co. v. Sugg, 142 Mo. 358; Ross v. Railway, 141 Mo. 390; Danforth v. Railway, 123 Mo. 196; Baker v. Railway, 122 Mo. 547; Hansbrough v. Fudge, 80 Mo. 307; Briant v. Jackson, 80 Mo. 318; Belkin v. Rhodes, 76 Mo. 643; Bank v. Allen, 68 Mo. 474; State v. Jeffors, 64 Mo. 376; Jones v. Hart, 60 Mo. 351; Fletcher v. Coombs, 58 Mo. 430; Dunn v. Raley, 58 Mo. 134; Saxton v. Smith, 50 Mo. 490; State v. Seaton, 106 Mo. 198. (3) Appellant complains of instructions given for plaintiff, but he is not entitled to be heard on that point, as he has failed to furnish this court with an abstract of the evidence on which the instructions were based. If he is entitled to a hearing, however, he should be told that his own instructions, numbered 2 and 4, given, and number 10 asked, are based on the ordinance in evidence, and are on the same theory as numbers 1 and 2 given for plaintiff; and if they contain error, he invited it in the instructions given at his own instance, and can not be heard to complain here. Meier v. Jackson, 78 Mo. App. 396; Grocery Co. v. Smith, 74 Mo. App. 420; Killoren v. Dunn, 68 Mo. App. 212; Tall v. Chapman, 66 Mo. App. 581; Young v. Hutchinson, 62 Mo. App. 512; Haggard v. Ins. Co., 53 Mo. App. 98; Culver v. Railway, 38 Mo. App. 130; Railway v. Schoennen, 37 Mo. App. 612; Straat v. Hayward, 37 Mo. App. 585; Green v. Wright, 36 Mo. App. 298; Atkinson v. Taylor, 34 Mo. App. 442; Railway v. Vivian, 33

Mo. App. 583; Waddingham v. Waddingham, 27 Mo. App. 596; State v. Beaty, 25 Mo. App. 214; Duffy v. Railway, 19 Mo. App. 380; Schaefer v. Railway, 128 Mo. 65; Baker v. Railway, 122 Mo. 533; Church v. Railway, 119 Mo. 203; Whitmore v. Sup. Lodge, 100 Mo. 36; Harrington v. Sedalia, 98 Mo. 583; Foster v. Guggemos, 98 Mo. 391; Tetherow v. Railway, 98 Mo. 74; Hazel v. Bank, 95 Mo. 60; Reilly v. Railway, 94 Mo. 600; Keen v. Schnedler, 92 Mo. 516; Bank v. Armstrong, 92 Mo. 265; Fairbanks v. Long, 91 Mo. 628. (4)  Counsel for appellant fail to comprehend the distinction between an action based on a municipal ordinance and an action based on the common law, with an ordinance introduced in evidence as an incident to negligence.  Byington v. Railway, 147 Mo. 673; Sanders v. Railway, 147 Mo. 411; Blair v. Railway, 89 Mo. 334; Phillips v. Dewald, 79 Ga. 732; Senn v. Railway, 135 Mo. 518, 519; Sandifer v. Lynn, 52 Mo. App. 553; Jelley v. Pieper, 44 Mo. App. 380; Osborne v. McMasters, 40 Minn. 103; Botts v. Pratt, 33 Minn. 323; Clements v. Railway, 44 La. 692; Brannock v. Elmore, 114 Mo. 55; Weller v. Railway, 120 Mo. 655; Butz v. Cavanaugh, 137 Mo. 503; Gratiot v. Railway, 116 Mo. 463; Sullivan v. Railway, 117 Mo. 214; Jackson v. Railway, 118 Mo. 199; affirmed, 148 Mo. 672; Bluedorn v. Railway, 108 Mo. 439; Parker v. Railway, 69 Mo. App. 54; Skinner v. Stifel, 55 Mo. App. 9; Pike v. Eddy, 53 Mo. App. 509; Railway v. Railway, 148 Mo. 665; Senn v. Railway, 135 Mo. 518, 519; State ex inf. v. Railway, 151 Mo. 162, 188; City Charter, p. 35, sec. 23

SMITH, P. J.—This is an action to recover damages for personal injuries.  The petition alleged in substance that Kansas City was a municipal corporation in this state, having a special charter, by the terms of which it had power by ordinance to compel persons to fasten their animals while stand-

ing in any of its streets; that said city passed an ordinance to the effect: "No person  *  *  *  shall leave any such animal standing in any street, avenue, alley or other public place without being fastened;" that defendant negligently and in violation of the terms of said ordinance left a certain horse and vehicle thereto attached in a certain street known as Grand avenue, within the limits of said city, without being fastened or guarded in any manner so as to prevent it from running away, and without any restraint whatever; that while plaintiff was driving along said street the defendant's horse, with the vehicle thereto attached, and carelessly left by defendant without restraint, became frightened and ran away, overtaking plaintiff and running violently against and upon the vehicle in which she was riding, breaking said vehicle down and violently throwing her out of said vehicle and against the ground and curbing at the sidewalk, thereby greatly injuring her—specifying in what particulars—to her damage, etc. In the court below the defendant, by demurrer, objected that the said petition did not state facts sufficient to constitute a cause of action; and although overruled there, it is renewed here.

A city to which a portion of the police powers have been delegated has a right to enact police regulations and to punish their violation by fine and imprisonment, but can not, in the exercise of this power, create a liability from one citizen to another, or a civil duty enforcible at common law, because this would be the exercise of a sovereign power belonging alone to the state. The legislature may delegate a part of the police power of the state to a city or village, but it can not delegate the legislative function of making laws that will bind citizens *inter sese* in civil proceedings. The police regulations control the citizen in respect to his relations to the city representing the public at large and for this reason are enforcible by fine and imprisonment, but laws controlling the

liability of the citizen, as between themselves, must emanate from the legislature where alone such power is vested by the. Constitution.

A provision of the charter of a city or village stands on a totally different footing from an ordinance passed under its police power. The latter creates no new right or remedy as between citizens and is enforcible by *quasi* criminal proceedings. Norton v. St. Louis, 97 Mo. 537; St. Louis v. Ins. Co., 107 Mo. 92; Sanders v. Railway, 147 Mo. 411; Byington v. Railway, 147 Mo. 673; Moran v. Car Co., 134 Mo. 641; Fath v. Railway, 105 Mo. 537.

As the cases in 147 Mo., *supra*, were decided since Brannock v. Elmore, 114 Mo. 55; Butz v. Cavanaugh, 137 Mo. 503, and Harman v. St. Louis, 137 Mo. 494, it is our duty to follow the former without stopping to inquire whether the latter are in harmony with them. If the latter can be properly included in the class of which Gratiot v. Railway, 116 Mo. 450, is a type, then, of course, there is no conflict, for cases of that class are to be distinguished from those in 147 Mo., and their like. Most of the cases of the class just referred to were actions for common-law negligence, where city ordinances were received in evidence because they entered into the case itself, or enforced a common-law duty. Railway v. Ervin, 89 Pa. St. 71.

The common law requires every horse whatever, no matter how gentle, to be attended or secured in the crowded business streets of a city when there by the act of the owner and subject to his control. It makes one who leaves a horse loose and unattended in a street responsible for injuries done by it in running away. Shearman & Redf. on Negl, sec. 35; Wharton on Negl., secs. 113, 915; Phillips v. Donald, 79 Ga. 732. It is thus seen that the part of the ordinance here pleaded declares and enforces a common-law duty. The plaintiff's action, while seemingly based on that

ordinance, is really based on the common law, or, in other words, it is but a common-law action for negligence.

The defendant in leaving his horse unattended and unsecured in the public thoroughfare neglected a duty enjoined upon him by the common law, as well as by the ordinance in question, and must therefore be held liable for the consequences of his negligence. The underlying principle upon which the defendant must be held liable is similar to that announced and applied in Gratiot v. Railway, *supra*, and the other cases there referred to. In fact and in principle, this case is not to be confounded with that of Fath v. Railway and the other cases cited at the outset, where the defendant, in consideration of the grant of a franchise to operate a railway, undertook and agreed to obey certain ordinance provisions. To constitute a cause of action, both an ordinance and a contract are not required to be shown in this case as in those. The contractual element is not a constituent part of the plaintiff's case. Her case is based upon the neglect by the defendant of a common-law duty and can be maintained without the ordinance. As to her, it neither helps nor hinders; but as to the public at large, a breach of the duty it enjoins may be the subject of *"quasi* civil-criminal proceedings."  It, therefore, follows that the plaintiff's petition is not subject to the objection which the defendant has urged against it.

The defndant further complains that during the progress of the trial the court committed a number of errors which he has assigned as grounds for a reversal of the plaintiff's judgment against him. But the plaintiff insists that if any such errors were committed the same were not preserved by a bill of exceptions, or, in other words, that the record fails to show that any bill of exceptions whatever was allowed, signed, sealed and made a part of the record in the cause. As we understand it, a bill of exceptions was allowed

and signed by the judge of the court before whom the cause was tried, but as to whether such bill was filed within the time required by the statute or the order of the court so as to become a part of the record is the question with which we are confronted. If there is no bill of exceptions then we are powerless to review the action of the court to which the assignments of error relate.

Turning to the record, and it is seen that during the January term, 1899, the defendant was, by an order of the court, duly entered upon the record, given until "on or before May 1, 1899, to file his bill of exceptions." The next term of the court began April 10, on which day the defendant applied for an order for the extension of the time for the filing of the bill until July 1. It directed the order to be made in accordance with the application therefor, but the clerk neglected to enter the same of record. Afterwards, during said April term, and on May 16, the defendant having discovered that the order of April 10 for the extension of the time for the filing of the bill had not been entered on the record, filed a motion for a *nunc pro tunc* entry, which was sustained, and the order made and entered accordingly. The bill was subsequently filed within the time given by the *nunc pro tunc* order.

The unentered order of the court of April 10 was made during the currency of the term for the filing of the bill, as fixed by its order of March 14. If the former had been entered of record when made the question we now have would not have arisen. It is the well-settled law of this state that where a court makes an order or pronounces a judgment and the clerk fails to enter the same on the record it is competent for the court during the term from its own recollection to correct or amend its entry *nunc pro tunc*, so as to make the same correctly express what was done or ordered by it in the

Vol. 85 app—5

first instance.   During the term, which, in legal contempla-
tion, is but a single day, everything is in *fieri*, and during
that term the judge of his own knowledge may enter any
judgment which has been pronounced.   Williams v. Silvey,
84 Mo. App. 433, and cases there cited; State v. Jeff-
ors, 64 Mo. 376.   It follows from this that the action of the
court in directing the *nunc pro tunc* entry extending the time
for filing the bill was clearly within the jurisdiction of the
court.

The defendant complains of the action of the court in
respect to the giving and refusing of instructions.   The de-
fendant, by his instruction number one, asked the court to
tell the jury that if defendant left his horse and wagon near
the curb-line of the street after having fastened him with *a
snap and weight in the usual way* to find for him.   The court
modified this instruction by striking out the *italicised* words
thereof and inserting in their place the words:   "So as to
prevent it from running away;" and as thus modified gave it.
It also, on its own motion, gave a further instruction to the
effect that a person leaving a horse in a street must exercise
the care and prudence in fastening or guarding it as a rea-
sonably prudent person would exercise under similar circum-
stances.   These instructions are not subject to any serious
objection.   They, with others given, fairly submitted every
issue in the case.   It was for the jury to determine, under
these instructions, whether or not the defendant, in leaving
his horse standing in a crowded street fastened by a strap to
a fifteen pound weight—if they found he did so fasten
it—exercised the prudence that would have been exercised by
a reasonably prudent person under similar circumstances.

Under the evidence there was no question but what the
negligence was the direct cause of the injury.   There was
nothing in the evidence to justify a doubt as to that.   The
refusal of the court by its instructions to so direct the jury

could result in no injury to defendant. The court, by an instruction given at the request of defendant, submitted the case to the jury without such direction. The case on the evidence was not one where the refusal to give such direction could operate to the injury of the defendant.

The defendant further assails the judgment on the ground that the court erred in its action refusing to allow the defendant to inquire on cross-examination of the plaintiff, who was a witness in her own behalf, whether on the hearing of defendant's motion for the reconsideration of her application to sue *in forma pauperis* she had not given certain testimony for the purpose of laying a foundation for showing that she had testified falsely as to her ownership of property. The court had heard the testimony of the plaintiff and the contradictory evidence of the defendant and could therefore well understand the force and bearing of the defendant's offer. It is true that the rule is, that when a witness is cross-examined he may be asked any questions which tend to test his accuracy, veracity or credibility, or shake his credit by injuring his character. He may be compelled to answer any question however irrelevant it may be to the facts in issue and however disgraceful the answer may be to himself, except when such answer might expose him to a criminal charge. But the cross-examination of this nature is somewhat in the discretion of the court and must necessarily be so to prevent abuse. Muller v. Hospital Ass'n, 5 Mo. App. 390; Goins v. Moberly, 127 Mo. 116. There is nothing disclosed by the record which would justify us in concluding that the court, in refusing the cross-examination for the purpose proposed, abused the discretion with which it was invested by law. The mere fact— if it were a fact—that plaintiff had sworn falsely in respect to the ownership of property was of itself not enough to show her a corrupt witness. She may have innocently sworn to what was not true. Unless her testimony was willful and

corrupt it would certainly not be admissible for the purpose of showing her to be a corrupt witness.   The defendant did not propose to show she had testified willfully falsely, but that she testified falsely.   This was not competent evidence under the rule for which the defendant contends, and therefore we think the court did not err in rejecting it.   It was not within any exception to the rule precluding a cross-examination as to immaterial collateral facts.

But if the defendant had been given the benefit of his impeachment of the plaintiff as a witness, we think the result would not have been different.   The evidence, without regard to that of plaintiff, was such that the jury could not well have found a different verdict; and therefore the defendant was in no way harmed by the adverse ruling of the court.

The judgment will accordingly be affirmed.   *Ellison, J.*, concurs; *Gill, J.*, absent.