PENNYAN *v.* ALEXANDER

No. 40320 January 7, 1957 91 So. 2d 728

*Geo. F. Henry, Jr.,* Starkville, for appellant.

*L. W. Brown,* Starkville, for appellee.

Kyle, J.

V. J. Pennyan, as plaintiff, filed suit in the justice of the peace court of District No. 4 of Oktibbeha County against Dewey Alexander, defendant, for property damage to the plaintiff's 1951 Ford automobile alleged to have been caused by the plaintiff's automobile colliding with a bull owned by the defendant, while the plaintiff was driving on the Craig Springs Road in said District No. 4. The plaintiff alleged in his declaration that the accident occurred on January 19, 1954, and was caused by the negligent conduct of the defendant in allowing his animal to roam on the Craig Springs Road, and that the plaintiff unavoidably ran into the bull.

A judgment was rendered against the defendant on May 15, 1954, for the amount sued for. The defendant thereupon executed and filed with the justice of the peace an appeal bond in the sum of $200, which was approved by the constable. The appeal bond was filed within the ten days allowed by the statute, and on May 24, 1954, the justice of the peace delivered the bond and all other papers in the cause to the circuit court clerk. When the case was called for trial during the October 1954 term of the circuit court, the defendant filed a demurrer to the declaration. The demurrer was sustained, and the plaintiff filed an amended declaration.

In his amended declaration the plaintiff alleged that he was driving lawfully on the Sturgis-Craig Springs Road when the bull owned by the defendant suddenly appeared from the woods beside the road and ran into the plaintiff's automobile, causing damage to the automobile in the amount of $199; that the accident was caused by the negligent conduct of the defendant in failing to keep his animal fenced in and off the highway; that the defendant had been warned about his stock being on the highway or public road, but had made no attempt to control the matter more efficiently; that the defendant's pasture fence was in bad repair, and was not being repaired.

At the May 1955 term of the court the plaintiff filed a motion to dismiss the appeal on the ground that the appeal bond showed upon its face that it did not comply with the requirements of Section 1198, Code of 1942, in that the bond had not been approved by the justice of the peace within the ten days allowed by the statute. Upon the hearing of the motion to dismiss the appeal the justice of the peace testified that the appeal bond had been approved by the constable and had been delivered to him sometime prior to May 24, 1954; and that the bond had been delivered by him personally to the clerk of the circuit court on May 24, 1954, along with the other papers in the cause. The circuit clerk testified that the justice of the peace had filed the papers, including the appeal bond, in his office on May 24, 1954, and that he had marked the same filed on that date. The court found that the bond had been filed with the justice of the peace within the time allowed by law, and that the justice of the peace had inadvertently failed to approve the bond before delivering it to the circuit clerk; and the court overruled the motion to dismiss the appeal and granted permission to the defendant to amend the bond in the proper statutory amount. The bond was amended accordingly and was formally approved by the justice of the peace.

The defendant then filed a demurrer to the amended declaration, alleging as grounds therefor; (1) that the declaration failed to allege that the negligence of the defendant was the proximate cause of the injury to the plaintiff's automobile; (2) that the declaration stated no cause of action; and (3) that the declaration failed to bring the cause of action within the provisions of Chapter 200, Laws of 1948, (Section 4876.5, Code of 1942, as amended.) The court sustained the demurrer, and allowed the plaintiff sixty days within which to amend his declaration. The plaintiff declined to amend, and requested an appeal to this Court. The appeal was granted, but was dismissed by this Court on January 9, 1956. See 84 So. 2d 388. A motion to reinstate the appeal was later overruled, without prejudice to the right of another appeal "If and whenever a judgment is entered by the circuit court which finally disposes of the case." See 84 So. 2d 691. When the case was called again at the May 1956 Term of the circuit court, the plaintiff again declined to amend his declaration further, and a final order was entered dismissing the plaintiff's suit upon its merits. From that judgment the plaintiff has prosecuted this appeal.

 █ The first points argued by the appellant's attorney as ground for reversal of the judgment of the lower court are that the court erred in overruling the plaintiff's motion to dismiss the defendant's appeal on the ground that the defendant's appeal bond was void, and that the court erred in permitting the justice of the peace to approve the defendant's appeal bond after the expiration of the ten days period of time allowed by the statute for the filing of such appeal bond. But we think there is no merit in either of these contentions. This is not a case where the defendant failed to file an appeal bond within the time allowed by the statute. The defendant filed an appeal bond within the time allowed by the statute, and the bond was accepted by the

justice of the peace, and was filed with the papers in the cause. The approval of the appeal bond by the constable did not meet the requirements of the statute. But when the justice of the peace accepted the bond, which had been approved by the constable, and treated it as a valid appeal bond, and filed it, along with the other papers in the cause, in the office of the clerk of the circuit court as required by the statute, the court had a right to permit the bond to be amended to conform to the requirements of the statute, and to permit the justice of the peace to approve the bond, as provided for by the statute. Adams et al. v. Day, 212 Miss. 778, 55 So. 2d 490; Denton v. Denton, 77 Miss. 375, 27 So. 383; Barrett v. Pickett, 117 Miss. 825, 78 So. 777; Keys v. Borden, et al., 178 Miss. 173, 171 So. 887, and cases cited.

We come now to a discussion of the main point argued by the appellant's attorney as ground for reversal of the judgment of the lower court, and that is, that the court erred in sustaining the defendant's demurrer to the amended declaration.

 █ It is argued first that the court erred in holding that the amended declaration did not state a cause of action under Chapter 200, Laws of 1948 (Section 4876.5, Code of 1942, as amended), which provides that: "It shall be unlawful for any person owning or having under control any livestock to permit such livestock to run at large on the highways or highway rights-of-way of this state maintained by the state highway commission, except as provided in Section 4 herein." But that argument in our opinion is untenable. The plaintiff's amended declaration does not allege, and it is not claimed, that the Sturgis-Craig Springs road is "a highway of this state maintained by the state highway commission. No statute has been called to our attention, and we have found none, which shows that the Legislature has ever designated that road as a "state highway." But it is

argued that the road referred to has been designated by the board of supervisors as a "state aid road" under the provisions of Section 4 of Chapter 6, Laws of Extraordinary Session of 1949 (Section 8035-01, Code of 1942, as amended), and that the protective principle of keeping unattended animals off the highway embodied in Chapter 200, Laws of 1948 (Section 4876.5, Code of 1942, as amended) should be applied to "state aid roads". A sufficient answer to that contention, however, is, that the Legislature has not seen fit to extend the provisions of Chapter 200, Laws of 1948 (Section 4876.5, Code of 1942, as amended) to "state aid roads"; and this Court has no power to do so.

It is next argued that the appellant, in his amended declaration, stated a cause of action under Sections 4864 and 4871, Code of 1942, which are parts of the General Stock Law (Sections 5441 to 5448, inc., Code of 1930, as amended; Sections 4864 to 4876, Code of 1942). Section 4864 provides that any person owning or having under his control any livestock, as defined therein, "shall not permit such livestock to run at large upon the open or unfenced lands of another person, except as herein expressly provided, but shall keep such livestock confined in a safe enclosure or upon lands belonging to such person." Section 4871 provides that every such owner of livestock "shall be liable for damages for all injuries and trespasses committed by such animals by breaking and entering into or upon the lands, grounds, or premises of another person; and the person injured shall have a lien upon the animal, or animals, trespassing for all such damages."

It can be readily seen that neither of those statutes was enacted for the purpose of protecting motorists upon the public highways from personal injury or property damage caused by collisions with domestic animals straying onto the highways. Those statutes were enacted for the purpose of protecting agricultural crops in stock

law areas from the ravages of straying livestock; and that purpose was to be accomplished (a) by prohibiting the owner of such livestock from permitting such livestock to run at large "upon the open or unfenced lands of another person," and (b) by making the owner of such livestock liable for damages "for all injuries and trespasses committed by such animals by breaking and entering into or upon the lands, grounds or premises of another person." Section 4871, Code of 1942, imposes no liability upon the owner of such livestock for damage to property caused by such livestock being at large upon the public highway. The statute is in derogation of the common law, and the court would not be warranted in holding that the statute means more than it actually says, or that it created civil liability wholly new and beyond the common law, other than that which is expressly stipulated in the statute itself.

It is finally argued, however, that even though the appellee may have violated no statute in permitting his bull to escape from its enclosure and be at large on the highway, the facts alleged in the amended declaration were sufficient to support an action in tort for the damage sustained by the appellant as a result of the collision with the bull, because of the negligent failure of the appellee to maintain a sufficient fence to keep his animal confined in a safe enclosure.

██ ██ The general rule relating to the liability of the owner of livestock for damages for injuries to motorists or property damage resulting from such livestock being at large on the public highway, is stated in 2 Am. Jur., 738, Animals, par. 60, as follows:

"Apart from statute or ordinance the owner of a domestic animal is not under an absolute duty to keep it from being loose and unattended on the highway and its being there is not in itself, or necessarily, unlawful or a wrong to the person injured or to the person whose property is damaged so as to render its owner liable for

the injurious consequences that may accidentally follow therefrom. At common law an owner of a domestic animal is under no legal obligation to restrain it from being at large on the highway unattended, and he is not liable for damages for an injury resulting from its being so at large unless he has knowledge of vicious propensities of the animal or unless he should reasonably have anticipated that injury would result from its being so at large on the highway." See also Annotations: 45 A. L. R. 505; 140 A. L. R. 742, and cases cited.

 The rule is well-settled that, "The owner or keeper of a domestic animal is bound to take notice of the general propensities of the class to which it belongs, and also of any particular propensities peculiar to the animal itself of which he has knowledge or is put on notice; and in so far as such propensities are of a nature likely to cause injury he must exercise reasonable care to guard against them and to prevent injuries which are reasonably to be anticipated from them." 3 C. J. S., 1247, Animals, par. 145; Yazoo & M. V. R. R. Co. v. Gordon, 184 Miss. 885; 186 So. 631. The owner of cattle and other animals whose subsistence is, wholly or in part, upon grass, grain and vegetables, must take notice of the natural propensity of such animals to stray and trample down crops, and he must exercise reasonable care to prevent such animals from trespassing upon the lands of his neighbors where crops are being cultivated and harvested. If he has a vicious horse that is accustomed to kick, or a bull that is given to assaults upon others, and he has notice of these vicious tendencies, he must be held to anticipate that damages may result from these vicious tendencies if they escape from his enclosure. "But", as said in Cooley on Torts, "there are other mischiefs which may be committed by domestic animals that one is under no obligation to anticipate and guard against, because they are not the result of a general propensity, but are committed, if at

all, by exceptionally vicious individuals of the particular species of animals. Thus, though every horse will roam into neighboring fields if not restrained from doing so, it is only in rare and exceptional cases that a horse will attack and injure those who come near him. Therefore, while the owner should anticipate and protect against trespasses on lands by his horse, he is under no moral obligation to anticipate that a horse in which no such disposition has been discovered will suddenly make an assault upon and kick and bite some passerby who chances to come within his reach. For this reason the keeper of a domestic animal is not in general responsible for any particular mischief that may be done by such animal which was of a kind not to be expected from him, and which it would not be negligence in the keeper to fail to guard against.'' Cooley on Torts, Fourth Edition, Vol. 2, p. 305, Sec. 266.

██ █ It is not claimed that the accident complained of in this case was due to any vicious propensities of the animal involved, of which the appellee had knowledge. Therefore, the only questions left for our decision are, whether, under the facts alleged in the amended declaration, it can be said that the injury complained of was one which the appellee was obliged to anticipate and guard against, and, if so, whether the facts alleged are sufficient to show that the appellee's negligence was the proximate cause of the injury.

In the case of Pelham v. Spears (1931), 222 Ala. 365, 132 So. 886, the Court had under consideration a demurrer to a complaint very similar to the amended declaration in the case that we have here, and in its opinion sustaining the demurrer the Court said: ''There seems to be a considerable difference of opinion as to the liability of owners of animals who injure others on the highway, and liability is most generally found where the animal was there in violation of a statute or ordinance; but the best adjudicated cases hold that, if the animal is not

unlawfully on the highway, the owner is not liable for injuries therefrom unless it was of such disposition and possessed such propensities, known to the owner, as would likely or probably suggest the infliction of damage to third persons or their property.''

In Fox v. Koehnig (1926), 190 Wis. 528, 209 N. W. 708, 49 A. L. R. 903, it was held that, in the absence of statute, it was not unlawful for domestic animals to be at large on the highway, and that the owner of a horse straying thereon and coming into collision with an automobile was not liable for the resulting damage, since such an accident was one that could not reasonably have been anticipated by the owner, even if he was negligent in failing to maintain secure fences. In Demarco v. Gober (1932), 19 La. App. 236, 140 So. 64, it was held that in the absence of evidence showing that mules, horses, or cattle were prohibited by ordinance or other authority from roaming at large on the highway in the locality in which the accident occurred, the owner of a mule could not be held to have been at fault because it went into the highway.

In Smith v. Whitlock (1942), 124 W. Va. 224, 19 S. E. 2d 617, 140 A. L. R. 737, the Court held that, in an action by a traveler on a highway against the owner of a horse, not known to be vicious, for personal injuries alleged to have been caused by the horse while negligently permitted to run at large on the highway, a declaration which failed to allege the character of the highway, the volume and speed of traffic thereon, the hour of the day, or other surrounding circumstances from which such owner should reasonably have anticipated that injuries to travelers on the highway would result from his negligent act, was bad on demurrer. The Court in its opinion in effect said, however, that independent of any statute, the owner of a horse which is negligently permitted to run at large on a public highway might be held liable for injury done by such horse to a traveler thereon, if from the character of the highway, the volume and speed

of the traffic thereon, the time of the day, or other attendant circumstances, the owner should reasonably have anticipated that injury to persons on the highway would result from the presence of the horse thereon.

There are many reported cases in which the courts have held that the owner of a domestic animal, which has escaped from its enclosure and has strayed onto a public highway, is liable for an injury resulting from its being at large on the highway, if he could reasonably have anticipated that injury would result from the animal being at large on the highway, and that it is a question of fact for the jury to determine whether under the circumstances disclosed by the record in each case the owner should reasonably have anticipated that the injury would result from the animal being at large. But most of these cases are cases involving animals which were on the highway in violation of a statute, or animals which had strayed onto much-traveled highways in thickly populated areas. Lins v. Boeckeler Lumber Co. (1927), 221 Mo. App. 181, 299 S. W. 150; Traill v. Ostermeier (1941), 140 Neb. 432, 300 N. W. 375; Drew v. Goss (1925), 112 Ohio St. 485, 147 N. E. 767; Pflugfelder v. Convent of Good Shepherd (1936), 55 Ohio App. 158, 9 N. E. 2d 4; Tassoni v. Le Boutillier (1938), 130 Pa. Super. Ct. 303, 196 A. 534; Serr v. Biwabik Concrete Aggregate Co. (1938), 202 Minn. 165, 278 N. W. 355, 117 A. L. R. 1009; Smith v. Whitlock (1942), 124 W. Va. 224, 19 S. E. 2d 617, 140 A. L. R. 737.

It is not necessary for us to decide here, and we do not decide, whether or not there may be cases where the owners of domestic animals who negligently permit such animals to be at large on much-traveled highways in thickly populated areas may be held liable under the common law for injuries inflicted by such animals upon motorists while operating their vehicles on such highways, even though such highways may not be maintained by the state highway commission. We have no such case

as that before us at the this time. The facts alleged in the amended declaration were not sufficient to show that the owner of the animal involved should have anticipated that injury would result to persons or property on the highway because of the animal escaping from its enclosure and straying onto the highway.

We think there was no error in the action of the trial judge in sustaining the demurrer to the amended declaration. The judgment of the lower court is therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Arrington* and *Gillespie,* JJ., concur.