## Romanick v. South Philadelphia Dressed Beef Company

*Daniel G. Murphy*, for plaintiff; *Richard A. Smith*, for defendant.

ROSEN, J., August 11, 1933.—This is a motion for judgment n. o. v. On May 5, 1932, about 8 a. m., the plaintiff was crossing Washington Avenue at Delaware

Avenue in the City of Philadelphia. At the same time, six or seven steers belonging to the defendant were running wild among the freight cars in Delaware Avenue. As the plaintiff approached Washington Avenue, one of these steers came up behind him, chased him, and knocked him down. For the injuries thus sustained, he brought this action.

The case was tried by a judge without a jury and resulted in a verdict for the plaintiff in the sum of $200. The defendant filed a motion for judgment n. o. v., on the ground that there was no evidence of negligence on the part of the defendant.

The testimony disclosed that these steers were part of a shipment of steers that arrived from Chicago at 2 a. m. on May 5, 1932, the date of the accident. They were fed and watered, and around 4 a. m. 21 of these steers were being transported from a stockyard at Tasker and Ash Streets to defendant's slaughterhouse at Second and Moore Streets, in Philadelphia. The steers were driven along Tasker Street attended by four employes; one of the attendants walked in front, one in the rear, and one on each pavement on the side of the herd. They used sticks to keep the steers in order. When the steers reached Delaware Avenue and Tasker Streets, a short distance from the stockyard they had just left, they stampeded and scattered in all directions. The attendants tried to head them off but could not. They then notified the defendant company, and about 20 minutes later were joined by three employes of the defendant to help them round up the steers. All the steers were not gathered up until some time between 11 and 12 o'clock that morning. In the meantime, and about 8 a. m. on the same date, the plaintiff was injured by one of these animals at Washington and Delaware Avenues, which is about a mile away from the place where the animals stampeded.

At the trial of the case, the defendant admitted its ownership of the steers. As no affidavit of defense was filed by the defendant, the allegations in paragraph 5 of the statement of claim offered by the plaintiff, to the effect that the steers in question were being driven by the employes of the defendant, were admitted in evidence.

Lewis J. Holt, a witness for defendant, testified that he was one of the persons driving the steers in question and that the method used in driving these steers was the usual method of conducting steers from the stockyard to the slaughterhouse. He stated that they very seldom had trouble with wild steers, and out of two or three lots of steers there will be very few that are wild. They cannot tell which of the steers will make trouble for them and start the others to run away, but that if some of the steers break away in transportation the rest will go with them; that they cannot tell when they are going to break until they are actually in the street with them and in the act of transporting them. He admitted that if the steers were wild it was customary to transport them by truck. When asked whether it was not customary to transport steers by truck in the City of Philadelphia, he at first did not reply, and when pressed stated that if they are wild they are transported by truck and that all other steers are driven. There was no evidence that any precautions were taken in this particular case to determine whether any of these steers were wild or were likely to break away from the group in transportation. After these steers arrived at the stockyard, they were fed and watered and driven upon the street.

We are of the opinion that under the facts of this case it was a question of fact for the trial judge whether there was any negligence on the part of the defendant. Under the evidence, the trial judge could very well have concluded that the defendant's employes were negligent in driving 21 steers through the city streets with only four attendants, knowing that if some of the steers broke

away the rest would follow them and that in that event the number of attendants would be inadequate to hold them in check. He could have reasonably concluded under the facts of this case that either a larger number of attendants should have been furnished or a fewer number of steers transported at one time.

The defendant relies upon the case of Rennie v. Schepps et al., 297 Pa. 39, where the Supreme Court affirmed the lower court's refusal to take off a nonsuit entered at the trial of the case. The facts in that case, however, are entirely different from the facts in the case at bar. Seven steers were delivered in a truck, and, the approach to the yard of the defendant being too narrow to permit direct delivery upon the premises, the animals were taken from the truck and driven into the yard, a distance of about 50 feet. One of the steers being thus driven into the yard bolted and ran away. Five men were in charge of the steers in the transfer from the auto truck to the yard. The Supreme Court said that there was no evidence of negligence on the part of the defendant. The same conclusion would have been reached in this case had the transportation of these steers been by auto truck instead of as disclosed by the evidence.

For the foregoing reasons the defendant's motion for judgment n. o. v. is dismissed.